# WILLIAM H. WIX

### *vs.*

## JOHN DOMINICK BOWLING.

*Mechanics' Liens*: *filing claim; what must show; separate*
*contract; time of work or furnishing material;*
*notes; received in payment,*
*waiver of lien.*

A lien claim which includes work done and materials furnished
under two or more separate contracts should give the dates
of each; a mere statement that the work "has been finished
and materials furnished within less than six months before
the filing of the claim," is not sufficient.          pp. 267-268

A mechanics' lien claim was filed on December 24, 1910, and
stated that it was for work and materials performed and fur-
nished, at the particular. time, and of the nature, kind and
amount, and for the purpose set forth in a bill of particulars
attached thereto, and stated that such work and materials had
been performed and furnished within less than six months
before the time of filing the claim; the bill of particulars con-
tained three items—two for labor and materials performed
and furnished between April 2 and August 16, 1910, and the
third for certain other labor and materials performed and
furnished between June 27th and August 15th, 1910. As to
the first two items the claim was held defective, as the bill of
particulars did not show that the labor and materials as to
such items had been performed and furnished within less than
six months.                              pp. 268-269

The mere acceptance of the note of a debtor does not raise any presumption that it was received as payment of a pre-existing debt.          p. 273

Where the claimant of a mechanics' lien receives a note for the claim from a debtor, its mere acceptance and transfer does not amount to a waiver of the lien.          p. 273

But where the claimant endorses the note to a third person, who, when the note comes due, with the knowledge and assent of the claimant, accepts in lieu thereof a new note from the maker, without the endorsement of the claimant, and so disposes of the new note that it is beyond the control of the claimant, and can not be indorsed or accounted for by him, the presumption arises that the note was regarded as a payment of the claim and operates as a waiver of the lien.   p. 274

*Decided April 9th, 1913.*

Appeal from the Circuit Court for Prince George's County (BEALL, J.).

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*C. Francis Owens* and *Harry C. Parkhurst* (with whom were *Wells, Owens & Wells* on the brief), for the appellant.

*W. Frank Stephen* and *M. Hampton Magruder* (with a brief by *Magruder, Stephen & Magruder*), for the appellee.

THOMAS, J., delivered the opinion of the Court.

The bill in this case was filed by the appellant to enforce an alleged mechanics' lien against the property of the appellee, and the appeal is from a decree of the Circuit Court for Prince George's County dismissing the bill as to the appellant.

The relief prayed is resisted on two grounds: first, because the claim was not filed in accordance with the provisions of the Code; and, second, because the lien was waived by the appellant.

The Code requires the claim to be filed within six months after the work has been finished or the materials furnished and section 19 of Article 63 of the Code of 1912 provides that, "Every such claim shall set forth: first, the name of the party claimant, and the owner or reputed owner of the building, and also of the contractor or architect or builder when the contract was made by the claimant with such contractor, architect or builder; second, the amount or sum claimed to be due and the nature or kind of work or the kind and amount of materials furnished and the time when the materials were furnished or the work done; thirdly, the locality of the building and the number and size of the stories of the same, or such other matters of description as may be necessary to identify the same." In the case of *German Lutheran Church* v. *Heise*, 44 Md. 453, the Court said that in the absence of evidence of an express contract, "the character of the account, the time within which the work was done or the materials were furnished, and the object of the work or materials, may afford proper grounds for the presumption that the work was done or the materials were furnished with reference to an understanding from the commencement that such work or materials should be done or furnished, if required by the builder; and in such case, it is from the last item in the account that the notice and the time within which to take the lien, should date. But where the materials are furnished for separate and distinct purposes, or at different times, or at considerable intervals, or under distinct contracts

or orders, though to be used by the contractor, or builder in executing one and the same contract with the owner, no such presumption will arise, and the right to take the lien must date from the time of furnishing the different parcels of material, and not from the last item in the account." In other words. where the work is done or the materials are furnished under distinct contracts, the claim must be filed within six months from the completion of the work or the furnishing of the materials under each contract.

The claim in this case was filed on the 24th day of December, 1910, and states that it is for work and materials furnished "at the particular time, and of the nature or kind and amount and for the purposes set forth in a bill of particulars hereto annexed, and which work has been finished and materials furnished within less than six months before the filing of this claim." The bill of particulars contains three items. The first is "To plumbing as per contract including furnishing of material and labor, furnished and performed between April 2nd and August 16th, 1910—$200.00." The second item is "To heating plant as per contract including furnishing of material and labor, furnished and performed between April 2nd, 1910, and August 16th, 1910,—$400.00; and the third item is "To extra bath room outfit as per agreement including furnishing of material and labor furnished and performed between June 27th, 1910, and August 15th, 1910,—$135.00." It therefore appears from the bill of particulars that the last item is for work done and materials furnished within six months before the filing of the claim,· but it fails to show, as to the first two items, that the work was done and the materials were furnished within that time. If the work referred to in these two items was done and the materials therein mentioned were furnished at any time between the second day of April and the twenty-fourth of June, 1910, said work was "finished and materials furnished," at the time mentioned in the bill of particulars, yet as to such work and materials the claim was not filed in time,· unless all the work referred to in the bill of particulars was done and

the materials were furnished under one contract. It is true, the claim states that the "work has been finished and the material furnished within less than six months before the filing of this claim," but if the work was done and the materials furnished under separate and distinct contracts, it would be impossible to tell what work and materials this statement refers to. The statement would be literally true if the work done and materials furnished under either of two contracts had been finished and furnished within six months prior to the filing of the claim, and yet the work done and the materials furnished under the other contract may have been finished and furnished at any time after the 2nd of April and prior to the 16th of August, 1910. The evidence shows that the work referred to in the first two items of the bill of particulars was done and the materials were furnished under one contract, while the work and materials referred to in the third item were covered by a separate and distinct contract. The claim is, therefore, defective as to the first two items of the bill of particulars, because it fails to show that the work charged for in those items was done, and that the materials therein referred to were furnished, within the time required by the statute. In the case of *Clark* v. *Boarman,* 89 Md. 428, JUDGE BOYD said: "When materials are furnished and work is done under *distinct contracts,* the material man or mechanic is not entitled to a lien to secure himself under all the contracts by simply counting from the last item of one of them. He must file his lien within six months after the work is finished or the materials furnished *under each contract.* * * * That being so, it is apparent that a lien-claim which includes work done and materials furnished under two or more separate contracts should give the dates for each, and a mere statement that the work 'has been finished and materials furnished within less than six months before filing of the claim' is not sufficient. It may be true that work was done and materials were furnished under one of the contracts within the six months, but if more than six

months had expired since the work was done or the materials furnished under the other contracts, the lien would not attach to them. If the dwelling was completed more than six months before the claim was filed, the lien could not attach for any balance due for it, and if the outhouses were, then it would be of no avail as to them. So if it be conceded that some work was done, or materials furnished, within six months, it would be impossible to say under which contract, and hence the Court could not pass a decree."

The defect in the claim to which we have alluded affects, however, only the first two items of the bill of particulars. The third item, as we have said, relates to work done and materials furnished under a separate contract, and the bill of particulars shows that the work was done and the materials were furnished within six months before the filing of the claim.

The second ground of the defense presents a more serious objection to the enforcement of the appellant's claim. The evidence shows that the appellant contracted to furnish the materials and to do the work mentioned in the first two items of the bill of particulars for $600.00, and later contracted to do the work and to furnish the materials mentioned in the third item for $135.00; that on July 12th, 1910, there was about $400.00 due the appellant on account of said work and materials, and that he called at the office of Daniels, who then owned the property and with whom the appellant contracted to furnish said materials and do said work, and finding him out, requested his clerk to ask Daniels to send him a check for that amount, or for as much as he could and a note for the balance, and that Daniels sent him by mail his note for $400.00, payable to the appellant ninety days after date, which the appellant endorsed and delivered to the Chesapeake Supply Company, of Washington, D. C., from whom he purchased the materials. After the work was completed under the two contracts, on the seventh of September, Daniels sent the appellant his note for $335.00, the entire balance due

under said contracts, payable to the appellant ninety days after date, upon which was written, "Payment in full for plumbing on house No. 4, Autoville." This note was also endorsed by the appellant and delivered to the Chesapeake Supply Company. The Chesapeake Supply Company had an account against the appellant for materials furnished him for the completion of the work mentioned in the contracts referred to and other contracts of the appellant, and when it received Daniel's notes endorsed by the appellant it gave the appellant credit for the amounts thereof on said account, and the company had said notes discounted at the bank in Washington with which it dealt. On the 13th of September, 1910, Daniels conveyed the property referred to in said claim to the appellee. When the $400.00 note came due, Daniels paid to the Chesapeake Supply Company the interest due thereon and $100.00 on account of the principal of said note, and, according to his testimony and the testimony of his clerk, gave his note to said company for the balance, $300.00, payable sixty days after date. According to the testimony of Sykes, the bookkeeper of said company, and Stock, its vice-president and manager, the new note for $300.00 was made payable to the appellant and delivered by Daniels to said company, but these witnesses do not appear to have any distinct recollection of that particular transaction. The Chesapeake Supply Company had the new note for $300.00 discounted by the bank and returned to Daniels the original note for $400.00, which was destroyed by him. The note for $335.00 came due on December 6th and the Chesapeake Supply Company, called on Daniels for payment or renewal of the note. Daniels and his clerk state that he paid by check to the Chesapeake Supply Company the interest on said note and $35.00 on account of the prinipal, and gave the company a new note for the balance, $300.00. In this they are confirmed by Sykes, the bookkeeper of said company, except as to the payee of the new note, and he states that it was made payable to the appellant. Stock says that the company did not receive said note of $300.00 at all, but it clearly appears

that the company did receive Daniel's check for $40.03, dated December 6th, 1910, being the interest and $35.00 on account of the prinipal of said note for $335.00, and we think that the fact that the company also received the $300.00 note is established by the decided preponderance of the testimony. We are also satisfied from the evidence in the case that both of the $300.00 notes given by Daniels were made payable to the Chesapeake Supply Company. Daniels and his clerk are positive in their statements to that effect, while Sykes and Stock do not appear to have any definite recollection about the matter. The note for $335.00 was marked "paid" by the bank December 6th, 1910, the date of the check for $40.03, which shows that it must have been paid by the check and the new note of that date for $300.00. The appellant's place of business was in Baltimore, and it is not probable that the company secured his endorsement and had the new note discounted at the bank on the same day the check and note were given. The appellant testified in the case, yet no attempt was made to prove by him that the two notes for $300.00 were made payable to him and that he endorsed them to the Chesapeake Supply Company, but he states that he never had any further dealings with Daniels after he received from him the note for $400.00 and the note for $335.00; that he never saw or heard of the $400.00 note after he transferred it to the Supply Company, and that the $335.00 note was given to him by the company when he asked for it. But the $335.00 note was not "paid" by the check for $40.03 and the new note for $300.00 until December 6th, 1910, and it appears that it was not given to the appellant by the company until he was required by the order of the Court below to produce it. The fact that it was not delivered by the Chesapeake Supply Company to Daniels after he gave his check and new note for it is probably accounted for by the fact that on December 8th, 1910, he was forced to institute proceedings in bankruptcy, but he says that when he gave the company his check and the new note he relied upon it to send him the old note as it had always done in like previous

dealings with him. Neither of the $300.00 notes given by Daniels to the Chesapeake Supply Company has been produced or satisfactorily accounted for. Stock says that they may have been mislaid among the papers of the company, or lost by the bank. It further appears that in previous transactions of the kind between Daniels and the appellant the notes given for materials furnished and work done by the appellant were endorsed by him to the Chesapeake Supply Company; that when they came due they were paid in part by Daniels and new notes given by him for the balance, payable to said company, and that in those cases, as in this, that course was followed with the knowledge and approval of the appellant.

Section 3 of Article 63 of the Code of 1912 provides that, "No person having such lien shall be considered as waiving the same by granting a credit or receiving notes or other securities, unless the same be received as payment or the lien be expressly waived, but the sole effect thereof shall be to prevent the institution of any proceedings to enforce said lien until the expiration of the time agreed upon." Under this section in the absence of an express agreement to the contrary, or some agreement inconsistant with the existence of a lien, the person having a lien does not waive it by taking notes for the amount due him, unless they are received as payment. · *Maryland Brick Co.* v. *Spilman,* 76 Md. 337. In this case there was no express agreement to waive the lien, and it is well settled that the mere acceptance of the note of a debtor does not justify the presumption that it was received as payment of a pre-existing debt. Nor would the transfer of the note by a person entitled to a lien for work done and materials furnished amount to a waiver of his lien. But where the claimant endorses the note to a third person, who, when the note comes due, with the knowledge and assent of the claimant, accepts in lieu thereof a new note from the maker, without the endorsement of the claimant, and so disposes of the new note that it is beyond the control of, and

can not be produced or satisfactorily accounted for by, the claimant, the inference does arise that he regarded the note as payment of his claim and that he waived his lien. It is said in 27 *Cyc.* 270, where numerous cases are found in support of the text, that "The transfer or negotiation of notes taken by the claimant does not defeat his right to a lien. But one who has taken a note for his claim must, in order to enforce a mechanics' lien, produce and surrender the note to the maker, or satisfactorily account for his failure to do so, and show that the note is not in any event enforcible against the maker." The only case there cited as suggesting a contrary view is the case of *Blake* v. *Pitcher,* 46 Md. 453. In that case the defendants offered the following prayer: "If the jury find from the evidence that the plaintiffs received from the defendant, Samuel K. Harris, his promissory note for a part of the purchase money for the bricks, then the plaintiffs are not entitled to recover in this action for such portion of their claim as was covered by such note, there being no evidence that said note has been lost, and the same not having been produced in Court to be cancelled." The note referred to in that prayer was not given by the owner of the property to the claimant who furnished the materials, but by Harris, the contractor, nor does it appear from the report of the case that there was any evidence tending to show that the plaintiffs had transferred or negotiated the note, and the Court held the prayer was properly rejected. In the case at bar the notes were given to the person seeking to enforce the lien and who so disposed of them, the notes given in renewal thereof as to place them beyond his control. Under such circumstances it is only reasonable to assume that he treated said notes as payment of his claim and waived his lien. If the Chesapeake Supply Company accepted the notes from the appellant *as payment* of his debt to the extent of said notes, then the notes, so far as the appellant is concerned, were paid and he is no longer entitled to a lien. On the other hand, if he received the notes with the intention of so disposing of them as to put them beyond his control, the

presumption is that he accepted them as payment of his claim.   It is stated in 34 *Century Digest,* under the title "Mechanics'.Liens," section 391; "An action to enforce a mechanic's lien will be dismissed where it appears that the plaintiff has taken notes in payment of his claim, which he has discounted, and which are not under his control," and many cases are there referred to as holding that where a mechanic has taken a note for his claim and has assigned it he can not enforce his lien until he has taken up the note and is able to produce it or satisfactorily account for it.   The same rule is stated in *Phillips on Mechanics' Liens* (3rd Ed.), sections 277, 278.   It would seem to follow as a corollary to. that proposition .that if his inability to produce or account for the note is the natural result of his voluntary act the presumption will be that he looked to the note as payment.   The proposition broadly stated is that where a person owes a duty to another, the performance of which is a condition precedent to the enforcement of his claim against such other person, intentionally places himself in such a position that he can not discharge his obligation, it will be assumed that he intended to waive his claim.

We have carefully examined the authorities cited by the appellant but we do not find in them a sufficient warrant for a different conclusion.   We think the only reasonable inference to be drawn from the conduct of the appellant under all the circumstances of this case is that he did accept the notes of Daniels as payment of his claim, and that he thereby waived the lien he seeks to enforce.   We must therefore, affirm the decree of the Court below.

*Decree affirmed, with costs.*